## DAVID BETTS *versus* FRANCIS NORRIS.

In an action against an officer for neglect of duty in not attaching real estate upon a writ, as he was directed to do, and might have done, sufficient to fully satisfy the judgment afterwards rendered, whereby the creditor lost a part of his debt, *it was held*, that the statute of limitations commenced running from the time of the return of the officer upon the writ, or of its return into Court, and not from the time when it was ascertained by the judgment and levy upon the property attached, that it was not sufficient to satisfy the judgment.

CASE against Norris, as a deputy sheriff, for an alleged neglect of duty. The writ in this suit was dated June 1, 1840.

The general issue was pleaded, and a brief statement filed, setting up the statute of limitations in defence.

The plaintiff, to support the issue on his part, produced and

read a copy of a writ, in which the plaintiff alleged his damage at two thousand dollars, and which had been sued out by the plaintiff against John Lane and Jabez Leadbetter in due form, returnable to the Court of Common Pleas, August Term, 1829, in this county, with an indorsement thereon of an order by the plaintiff to the defendant to attach sufficient property; and having a return thereon by the defendant, that he had made service thereof, by attaching sundry items of real and personal estate, and summoning the said Lane and Leadbetter, &c. The plaintiff then produced and read a copy of a judgment, duly rendered in his favor in the same case, at the June Term of this Court, in this county, holden in 1834, for $1558, debt, and $317,67, costs, and an execution thereon, duly sued out, and seasonably levied on the property attached on said original writ, but without satisfying the same in full, but leaving a balance unpaid of $332,69. And then offered to prove that the defendant might, on said writ so served and returned by him, have attached other property of the debtors therein named sufficient to have fully satisfied said execution.

Whereupon WHITMAN C. J. presiding at the trial, ruled, as the statute of limitations had been interposed, and the nonfeasance in such case would appear to have taken place more than six years before the institution of this suit, that such proof would not support the plaintiff's claim. And thereupon he consented to become nonsuit, reserving leave to move to take it off, and have the action stand for trial, if the whole Court should be of opinion that the action could be maintained upon the proof so offered.

*May*, for the plaintiff, contended, that the action was not barred by the statute of limitations. It could not be ascertained in any possible manner whether there was, or was not sufficient property attached to respond the debt and costs, until it was sold or appraised off on execution. The creditor could maintain no action until the contingency happened, when the amount of the debt, and the value of the property had both been ascertained. The cause of action did not accrue until that time, which was within six years of the time of

the commencement of the action. *Hinsdale* v. *Larned*, 16 Mass. R. 65; *Bailey* v. *Hall*, 4 Shepl. 408; *Walker* v. *Bradley*, 3 Pick. 261; *Cæsar* v. *Bradford*, 13 Mass. R. 169; *Rice* v. *Hosmer*, 12 Mass. R. 127; *Mather* v. *Greene*, 17 Mass. R. 60. And a case in Penobscot, not yet reported, (*Harriman* v. *Wilkins*, 2 Appl. 93,) wherein it was decided, that the statute of limitations began to run from the time of the return of *non est inventus* on the execution, and not from the time of service of the writ, in action against an officer for taking insufficient sureties in a replevin bond.

*Wells*, for the defendant, contended, that the cause of action accrued to the plaintiff on the return of the writ into the clerk's office, with the insufficient return upon it. The plaintiff then knew what the officer had done. He knew also how much was due to him, and the value of the property. It was real estate, and could be seen and valued by the plaintiff as well as by the officer. The action is founded on the alleged neglect of the defendant in not attaching sufficient property on the writ. That was the only omission of duty by him of which complaint is made. There should be some limitation of the liability of officers, and the law contemplates that there should be. The time is to be ascertained by looking at the acts of the defendant, and not by the length of time the parties may keep an action in Court. Angell on Lim. 294; 4 T. R. 610; *Rice* v. *Hosmer*, 12 Mass. R. 127; *Greene* v. *Lowell*, 3 Greenl. 373; *Miller* v. *Adams*, 16 Mass. R. 456; *Bishop* v. *Little*, 3 Greenl. 405; *Williams College* v. *Balch*, 9 Greenl. 74; *Wilcox* v. *Plummer*, 4 Peters, 172.

The bail have a right to surrender their principal after judgment, and therefore no action brought before that time had elapsed, could have been sustained. In a replevin suit, the law requires the bond to be returned into Court, and its very condition is such, that there can be a breach of it only after judgment for a return, and the return of an officer, that no return had been made. In both cases, the cause of action did not accrue, and of course the statute of limitations did not commence running until after judgment.

The opinion of a majority of the Court, SHEPLEY J. dissenting, was delivered June 3, 1843, by

WHITMAN C. J. — This action against the defendant is for a nonfeasance as a deputy sheriff, in not attaching sufficient property as ordered on mesne process in favor of the plaintiff, and against John Lane and Jabez Leadbetter, to satisfy the judgment afterwards recovered thereon. The writ was served in 1829. This action was commenced in June, 1840; and within six years of the rendition of the judgment in that case. The statute of limitations is relied upon in defence. The plaintiff insists, that his right of action against the defendant did not accrue till after the rendition of judgment against Lane and Leadbetter. The defendant contends that it accrued, if ever, at the time of the attachment returned on the writ against them. At the trial, the plaintiff consented to become nonsuit, reserving leave to move to have it taken off, and the action reinstated for trial, in case the Court should be of opinion, that the defence, under the statute of limitations, could not be sustained.

To determine when the right of action accrued, is not without its difficulties. It is very clear that the particular act of nonfeasance occurred when the writ was returned by the defendant, without having complied with the order of the plaintiff; and the plaintiff's writ must necessarily so allege it. But it is insisted, though the act of nonfeasance did then take place, that the injury did not arise till after the rendition of judgment; nor until it was ascertained, by a levy, that the property attached was insufficient to satisfy the execution thereon issued. The question would seem to be, was the omission a wrong done to the plaintiff, from which the supposed injury accrued? or was it an innocent act of the defendant, from which consequential injury alone arose to the plaintiff? If the former, then the act complained of was the subject matter of the grievance; and the statute should begin to run from the time it took place. If the latter, then it should begin to run only from the time of the happening of the injury. If a man erects a dam on his own land, causing a reflux of a

stream, which would overflow his neighbor's land only in case of a high freshet, the erection of the dam would be an innocent act; and the injury to be complained of would be consequential merely. But if the law gave a right to erect such a dam, and provided no other remedy for a person liable to be injured by it, than, that the builder of it should, in the case of a rise of water, hoist a gate sufficiently high to prevent the reflux of the water, to the injury of his neighbor, then the not hoisting of the gate would be the grievance to be complained of.

The case at bar has been supposed to bear a similitude to the case of *Roberts* v. *Read*, 16 East, 215, in which it appeared that the defendant, a surveyor of highways, had so excavated adjoining the plaintiff's wall, that some months afterwards it fell. The cause of action was considered as accruing when the wall fell. It was a special action on the case for consequential damage. Till the wall fell, there was no trespass upon the plaintiff's rights. It did not appear but that the surveyor had done what he innocently might do. The case was decided upon the same principle, as in any other case of an injury merely consequential. Lord Ellenborough remarked, "it is sufficient that the action was brought within three months after the wall fell, for that is the gravamen; the consequential damage is the cause of action in this case." And that, "being an action on the case for consequential damage, it could not have been brought till the specific wrong had been suffered."

The same was the case in *Gillon* v. *Boddington*, 1 C. & P. 541, which has been supposed also to bear a similitude to the case at bar. But in that case, the reporter, in his marginal abstract, notices, that "the act itself was not tortious or injurious, except from those consequences, which occurred sometime after." In the case at bar, the act of returning the writ without attaching sufficient property, was the actual wrong done, which occasioned the injury, and is the substantive cause of action. It was a wrong for which an action might instantly have been brought. Whether it could have been sustained or not, might still have depended on whether the plaintiff's

Betts *v.* Norris.

action, against Lane & Leadbetter, could have been sustained. If not, the neglect to attach property was no wrong or injury to him. And it might have been found convenient to continue the action against the defendant till it was ascertained, whether the plaintiff's action against Lane & Leadbetter proved successful; and also to ascertain the amount of damage, which the nonfeasance complained of would ultimately occasion. Because, until this had been done, it might have been inconvenient to establish those facts, could form no ground to question the original cause of action against the defendant.

It is undoubtedly very true, that no man has a right of action against a wrongdoer, unless he is personally injured. But, in the case of every violation of the rights of a particular individual, the law implies damage. It may be but nominal. But still a right of action accrues for it. A sheriff might neglect to arrest and commit a worthless debtor to jail; and it might even happen that it would be productive of a pecuniary loss to the creditor, that he should do so; still, if the creditor had a right to have him committed, a right of action would exist in his behalf, for the nonfeasance, and nominal damages would be recoverable. In the case at bar, whether the defendant, by not attaching more property, did the plaintiff a wrong, depended on the amount of his debt. That amount did not depend on any subsequent proceeding. It was the same, at the time he commenced his suit for it, that it was at the rendition of judgment; with the exception of the damage for the detention of the debt. The wrong done to the plaintiff, therefore, occurred when the nonfeasance took place, and not when it came to be ascertained, by subsequent events, what the precise amount of the injury turned out to be.

It is believed, that there is no substantial distinction between actions for torts, where assumpsit might also have been sustained, and official acts of misfeasance or nonfeasance, if there be any such, in which assumpsit could not have been sustained. If a tort be relied upon, it is not perceived how there can be any such distinction. There is certainly no direct authority in

support of it. But if there were any ground for such a distinction, is it not clear that assumpsit might have been instituted, instead of case, for the injury here complained of? Wherever the law requires one man to perform an official duty for another, for a reward, and at his request, does not the law imply a promise? If so, an action would well lie upon such promise. Mr. Justice Bailey, in *Howell* v. *Young*, 5 B. & C. 259, seems so to have understood the law, when he says, "It appears to me, that there is not any substantial distinction between an action of assumpsit, founded upon a promise, which the law implies, that a party will do that which he is legally liable to perform, and an action on the case, which is founded expressly upon a breach of duty."

This authority is, furthermore, directly in point, to show that the injury arising from a wrong done, takes its date from the time of doing the act occasioning the injury. An attorney, in that case, was guilty of a misfeasance, or nonfeasance, attended with a consequent injury to the plaintiff. It was held, that the damage, subsequently arising, did not constitute a substantive cause of action, of itself; and that the statute of limitations began to run from the time that the cause producing the injury took place.

In *Godin* v. *Ferris*, 2 H. Bl. 14, it was holden, that the misfeasance of a custom-house officer, in wrongfully seizing goods, not liable by law to be seized, took place at the time of the seizure; and that the statute of limitations began to run from that time, and was not dependent upon the event of proceedings at law against the goods. Similar cases have repeatedly arisen since, and have been similarly decided in the English courts. The case of *Fetter* v. *Beale*, 1 Salk. 11, is to the same effect in principle. The Court held, that an action depending upon consequential injury to a person, arising from an assault and battery, committed so long anterior as to be barred by the statute of limitations, was also barred, though occurring afterwards.

In *Miller* v. *Adams*, 16 Mass. R, 456, in the case of the misfeasance of an officer, in not duly serving a writ, whereby

the judgment rendered in the case became liable to be re-versed, it was holden, that he was protected by the running of the statute of limitations, from the time of the act of misfeas-ance, and not from the time of the reversal. In *Cæsar* v. *Bradford*, 13 Mass. R. 169, it appeared that the officer, serv-ing the original writ, falsely returned that he had taken bail, when in fact he had not; the Court decided, that the right of action accrued against him at the time of his making the false return. In *Rice* v. *Hosmer*, however, 12 Mass. R. 127, the same Court, in an action against the sheriff, for the default of his deputy, for not taking *sufficient* bail, ruled that the right of action did not arise till after *non est inventus* returned upon the execution. Wherein the distinction lies, in point of prin-ciple, between this, and the case of *Cæsar* v. *Bradford*, is not obvious to my mind. In both, the officer must have returned, that he had taken bail in the usual form. In the one it ap-peared, that he had taken no bail, and in the other, that in-sufficient bail had been taken. The reason given by Mr. Justice Dewey, who delivered the opinion of the Court, for the decision in the latter case, is, that "it is usual for the offi-cer, who serves the writ, to retain the bail bond until it is called for by the plaintiff in the action; and he has no occasion to call for it, until his execution against the principal is returned unsatisfied. The creditor, therefore, cannot be pre-sumed to know any thing of the sufficiency of the bail, until that time." And it would seem, that he might have added, " or whether any bail had been taken." Upon this ground, it was held, that the statute of limitations did not begin to run, in such case, till after the return of *non est inventus*. And upon the authority of this case, it was so ruled again in *Math-er* v. *Green*, 17 Mass. R. 60. Mr. Justice Dewey, however, in the above opinion, instanced the cases of an escape, non-arrest of the body, and not *attaching goods*, &c. as being those in which an action would lie immediately, or before judg-ment recovered in the action.

If not attaching goods, when ordered to do so, give an in-stant right of action, and it would seem that the whole court

must have concurred with him in this *dictum*, the statute would begin to run from the time of such neglect; and it would seem to be an expression of an opinion, if not an authority, directly in point. Is there any distinction, in principle, between not attaching goods when ordered, and not attaching sufficient, as it respects the time when a right of action would accrue for the nonfeasance? It could no more be told, how much the plaintiff would recover, or whether he would recover any thing, in the one case than in the other. Suppose the amount of goods attached to be trifling, and the demand of the plaintiff large, when there were goods in abundance, that might have been attached, must the creditor wait till judgment and execution, before he would have a right of action against the officer for his neglect? If not, how much must the officer attach, short of a sufficiency, to prevent the right of action from accruing till after judgment? Really, it does seem, that it can make no possible difference in principle, as to the time when the right of action should accrue, whether the officer returns a writ with but a nominal attachment, and a return of an attachment short of the amount, which he may be ordered to attach, and which he might have attached.

As to the argument arising from any inability to prove the amount of the actual damage till after judgment and execution, it is difficult to perceive how that should have any legitimate bearing upon the question. If a man be sued for the breach of his covenant of warranty, in his deed of real estate, he cannot tell what the amount of the damages to be recovered against him may be, till judgment recovered; still it will not affect the time of the accruing of his right of action against his warrantor. In the case at bar, if the nonfeasance had been the non-arrest of the debtors, whereby they had been enabled to flee the country, with property enough to pay the debt, the amount of damage would have been uncertain till judgment against them. The same difficulty would have existed, if the attachment had been merely nominal. It must be that the right of action exists, whenever the officer fails to do his duty; and that the ascertainment of the actual damage

is but an incident thereto; the ascertainment of which may depend upon subsequent contingencies; as in the case of a permanent or durable injury arising from an assault and battery, and numerous other tortious acts.

In *Wilcox & al.* v. *the Executors of Plummer*, 4 Peters, 172, this whole subject seems elaborately to have been considered; and the learning, in reference to it, to have been exhausted. The arguments of counsel were by Mr. Wirt, then Attorney General of the United States, for the plaintiff, and Mr. Webster, for the defendant. The defendant's intestate, an attorney, had received an indorsed note for collection. He first sued the maker, and obtained judgment against him; which proved fruitless, by reason of his insolvency. The indorser was not sued till long after a reasonable time had elapsed, after judgment against the principal; and, when sued, the action was framed in such an unskilful manner that it abated; before which the statute of limitations had intervened, and barred the plaintiff's right to recover. This action for the default of the intestate, came into the Supreme Court upon a disagreement of opinion, certified from the Circuit Court. The Supreme Court certified their opinion to the Circuit Court, on the first count, which was for negligently omitting to sue the indorser in a reasonable time, to be, " that the cause of action arose at the time, when the attorney ought to have sued the indorser, which was within a reasonable time after the note was received for collection; or, at all events, after the failure to collect the money of the maker." Mr. Justice Johnson, in delivering the opinion of the Court, remarked, that, in such case, no more than nominal damages might have been proved or recovered; but that proof of actual damage may extend to facts that occur and grow out of the injury, even up to the day of the verdict." The other count in the writ, was grounded upon the negligence in framing an insufficient writ against the indorser; and suffering the statute of limitations to become a bar; in reference to which the Court held, that the injury complained of in that count must take its date from the time of making the insufficient writ; and not from the time when

the claim became barred by the statute of limitations. From a careful examination of that case, it will seem to be difficult to infer, that the statute of limitations, in any case of nonfeasance or misfeasance, unaccompanied by fraudulent concealment, should be considered as beginning to run from any time, other than that at which the act of nonfeasance or malfeasance actually took place. The substantive cause of action then takes place; and whatever may follow, or flow from it, is but incident thereto, and must follow the fate of the primary cause.

In the case at bar, it seems to a majority of the Court, that it results from principle, and from the authorities cited, that an action had accrued to the plaintiff, if at all, on the return of the writ; and that no substantive cause of action can be considered as having arisen afterwards. The plaintiff had, for years after all the damage complained of had been fully ascertained, ample opportunity to have instituted his suit. Not having done so till after six years had elapsed from the time when his cause of action arose, he is barred; and judgment must be entered on the nonsuit.

The following reasons for his dissent were given by

SHEPLEY J. — It will be admitted, that the statute of limitations commences to run from the time, when the right of action accrues. The only difficulty consists in determining that question. The general rule is believed to be, that in actions founded on contract, express or implied, the right of action accrues upon the breach of it; and in actions founded on tort, it accrues when the party is injured. A mere violation or neglect of duty enjoined by law, or otherwise imposed without contract, unless accompanied or followed by an injury to some person, cannot be the foundation of an action at common law. The law does not allow an individual to maintain a suit to redress moral wrongs, from which he has suffered no injury. The state or sovereign power only can interpose in such cases. And to decide whether the omission to comply with an order to attach property was a wrong or an innocent act, can afford little aid in forming a conclusion, *when the right of action*

*first accrues.* That right does not arise out of any such moral attribute of the act. Nor does it first accrue when a wrongful act is done, unless the party suffers from it at that time, which is the case in trespasses; and may, or may not, be the case in those instances, in which an action on the case would be the proper remedy. There is therefore a fundamental distinction in this matter between actions founded on contract, and those founded on tort. And a solution of the remarks made in some of the decided cases may be found in an exception, to which most if not all general rules are liable. To the rule, that in actions founded on tort the right of action first accrues upon the injury suffered, an exception may be found in cases where the form of the action may be tort or assumpsit, at the election of the party. In such cases, if the party elects to bring an action of tort, the mere form of action will not assist one to determine when the right of action accrues. There is a class of cases falling within this exception; and among them is the case of *Howell* v. *Young*, 5 B. & C. 259. And this fully explains the remarks of Justices Bayley and Holroyd in that case. Mr. Justice Bayley says, "it appears to me, that there is not any substantial distinction between an action of assumpsit founded upon a promise, which the law implies, that a party will do that, which he is legally liable to perform, and an action on the case, which is founded expressly upon a breach of duty. Whatever may be the form of action, the breach of duty is substantially the cause of action." The language of every judicial opinion is explained by the subject matter under consideration; and the breach of duty then considered, was that arising out of the relation of attorney and client, for which assumpsit might as well have been maintained as a special action on the case, and not such a breach of official duty as can never be the foundation of an action of assumpsit. When the action is founded upon a neglect of official duty, the gist of the action is the injury suffered; and no action can be maintained but one in form, as well as substance, founded on that injury; unless it be otherwise provided by statute. The relation between an officer and the person for whom he per-

forms an official act, is not that arising out of a contract, ex-
press or implied. The law requires the performance of the
act; and requires it in many cases, when the officer would re-
fuse to perform it, if he were at liberty to do so. The com-
pensation does not arise out of any such implied or express
contract; but it is the reward of the law. And in many cases
it is more, and in others less, than would be awarded, if the
services were performed by virtue of a contract. No case has
been produced from the books, shewing that assumpsit could
be maintained for the omission to perform such an official act.
And Mr. Justice Bayley's remark, in *Howell* v. *Young*, does
not apply to a case of official neglect of duty, but to a case of
professional neglect. And in such cases, while the relation be-
tween the parties arises out of a contract, express or implied,
the action may be in form of assumpsit on a breach of the
contract, or in form of tort arising from a neglect of duty.
The distinction, as to the time when the right of action ac-
crues, between actions of tort founded on the neglect of official
duty, and on the neglect of professional duty, is this: for the
neglect of a professional duty, a right of action accrues as soon
as there is a breach of the contract, irrespective of the form
of action. And if an action of tort be brought for the injury,
which may subsequently happen from such breach, that cannot
change the fact, that a right of action existed as soon as the
contract was broken. While in actions founded on an official
neglect of duty, it does not necessarily follow, that an injury
has happened from that neglect, and there is no earlier right of
action in any other form. In this class of cases, therefore, the
right of action accrues, when an injury happens, whether that
be at the time of the neglect of duty, or at a subsequent
period.

With these principles there will be little difficulty in this
case in arriving at a satisfactory conclusion.

The plaintiff sued out a writ against John Lane and Jabez
Leadbetter. The *ad damnum* was two thousand dollars. The
defendant, being a deputy of the sheriff, received the writ with
written instructions to attach all their real estate. On the 12th

of June, 1829, he returned on it an attachment of certain real estate described, not including all the real estate of Leadbetter which he might have attached ; judgment was recovered June Term, 1834, for $1558, debt, and $317,67, costs ; and the execution issued thereon was levied within thirty days after judgment on all the real estate attached, leaving a balance un- satisfied of $332,69. Upon these facts, when could the plain- tiff have first maintained an action against the defendant for ` neglect of official duty ? Not until he had suffered an injury. Being enabled to exhibit all the facts, could he have proved an injury between the date of the attachment and the rendition of judgment ? During that time, the amount due from Lane and Leadbetter was undetermined and uncertain. Whether the real estate attached would satisfy the whole judgment, was uncertain. This could be ascertained only by the appraise- ment. It might increase or decrease in value during the time that the suit was pending. There might be an increase, from a rise of prices, and from repairs, and from improvements ; or a decrease from a fall in prices, and from dilapidation, and from destruction by fire or otherwise. He could not have re- covered nominal damages, for the reasons before stated, with- out proof of some actual injury at the time of the commence- ment of the suit. Damages may in such cases be recovered for injuries suffered to the time of the trial, but this is true only, when there was an existing cause of action, and some damage at the time of the commencement of the suit. An action of tort cannot be maintained, if no injury had been suffered at the time of its commencement, by proving that an injury has since happened from the cause alleged. There may be, and often is, an immediate injury arising out of a neglect of official duty ; and in such cases the right of action accrues instantly. And in certain cases the law implies an injury as arising necessarily from the wrong done, as in slander. In the present case the burthen of proof would be on the plaintiff, and he must make it certain that he had been injured, before he could maintain an action. And it is not perceived how this, could possibly be done, until after the plaintiff had recovered

his judgment, if it could be, before the insufficiency of the property attached to satisfy it was legally ascertained.

There does not appear to be any case brought to the consideration of the Court, opposed to these positions. The case of *Fetter* v. *Beale*, 1 Salk. 11, was an action for assault, battery, and maim. It appeared, that the plaintiff in a former action of assault and battery had recovered damages for the injury, and that since that time a piece of his skull had come out, for which this action was brought. The decision was, that the former recovery was a bar, because the whole injury, as well that, which was prospective and contingent, as that, which was existing and apparent, could have been proved and recovered for in the first action. The case of *Goden* v. *Terris*, 2 H. Bl. 14, was an action against an officer of the customs, for illegally seizing goods as forfeited. It was objected, that the action was not commenced within three months next after the matter or thing done, as the statute required. The decision was, that the statute commenced to run from the seizure. The action was trespass, which implies damage from the illegal act, and there was a present damage also by removing the goods, and the whole proceedings were at that time, either lawful or unlawful.

The case of *Howell* v. *Young*, was a special action on the case, founded, as before stated, on a breach of an implied contract, for which assumpsit might have been brought. And there was also a present defect of title, capable of being clear-. ly and certainly established by proof, as soon as the neglect of duty occurred. And this present defect of title is the foundation of the remark of Mr. Justice Bayley, where he says, "if the allegation of special damage had been wholly omitted, the plaintiff would have been entitled to a verdict of nominal damages." The ground, upon which he would have been entitled immediately to that or a greater measure of damages, is also explained by Mr. Justice Holroyd, where he says, "so here, if the action had been brought immediately after the insufficient security had been taken, the jury would have been bound to give damages for the probable loss, which the plaintiff was

likely to sustain from the invalidity of the security." The case of *Short* v. *McCarthy*, 3 B. & A. 626, was assumpsit against an attorney for neglect of duty in not making a diligent search of the books of the Bank of England respecting the title to certain bank annuities; and the decision was, that the statute commenced to run from the neglect of the duty, which was a breach of the contract, although the plaintiff did not discover, that the title was bad until sometime afterward. The case of *Brown* v. *Howard*, 2 B. & B. 73, was also assumpsit against an attorney for neglect of duty in not laying out money on good security; and the defect of title did not become known to the plaintiff until sometime afterward. The decision was, that the cause of action accrued from the neglect of duty, that being a breach of the contract. The case of *Battley* v. *Faulkner*, 3 B. & A. 288, was assumpsit on a contract to deliver spring wheat, and the defendant delivered winter wheat, which being sown as spring wheat, did not produce a crop. And it was decided that the cause of action was the breach of the contract, although the special damage became first known to the plaintiff, when he expected his crop. The case of *Granger* v. *George*, 5 B. & C. 149, was trover for boxes containing books and papers. And it was decided, that the gist of the action was the conversion, and that the statute commenced to run from that time, although the plaintiff did not come to the knowledge of the conversion until sometime afterward. In these cases, where the party would seem to have suffered in consequence of his ignorance, it is apparent, that he might, by a careful attention to his business, have obtained an earlier knowledge of the facts, and might have been enabled to prove his loss, and to obtain redress. The case of *Wilcox* v. *the Executors of Plummer*, 4 Pet. 172, was assumpsit on the implied contract of an attorney to conduct the business of his clients with diligence and skill. And the decision was, that the right of action accrued upon the breach of that promise. Mr. Justice Johnson, in delivering the opinion of the Court, says, "the ground of action here is a contract

to act diligently and skilfully; and both the contract and the breach of it admit of a definite assignment of date."

The following cases tend to establish, confirm, or elucidate, the positions before stated. The case of *Roberts* v. *Read*, 16 East, 215, was a special action on the case against surveyors of highways for digging so near the plaintiff's wall as to undermine it, and cause it to fall. The act was done in May, 1810. The wall fell the following January. Lord Ellenborough says, " it is sufficient, that the action was brought within three months after the wall fell, for that is the gravamen; the consequential damage is the cause of action in this case;" " it could not have been brought till the specific wrong had been suffered." And Mr. Justice Bayley significantly asked, " how was the damage to be estimated, before it actually happened." The case of *Gillon* v. *Boddington*, 1 C. & P. 541, was an action on the case for an injury occasioned to the wall of a wharf, by making excavations to prepare a dock. These were made in the year 1822, and the wall fell in 1824. The decision was, that the statute did not commence to run until after the wall had fallen. *Rice* v. *Hosmer*, 12 Mass. R. 127, was an action on the case for official neglect of duty in omitting to take sufficient bail. And in the opinion of the Court it is said, " had the plaintiffs brought their action at any time, before they obtained judgment in the suit against Carlton, they could have shewn no actual damage. It was then uncertain, whether they would prevail in their suit; and if they did, the principal might satisfy the judgment, or be surrendered by the bail." There do not appear to have been greater difficulties in that case, than in the present, in maintaining an action before judgment. In that case it is also said, that " there is no doubt, that an action upon the case for the neglect or misconduct of an officer, may lie in some cases immediately or before judgment in the suit; as for suffering an escape, neglecting to arrest a debtor, or to attach his goods, or to return the writ." And Mr. Justice Dewey very correctly says, " but those cases are different from the present, and depend on different principles." The reason of the difference in principle is

this, that in those cases named by him as examples, there would be a present injury arising, and capable of being proved, as soon as the neglect or act had occurred. The case of the sheriffs of *Norwich* v. *Bradshaw*, Cro. El. 53, was an action on the case for an escape against the party committing it. And the decision was, that the sheriffs were thereby damnified, although they had neither been sued for, nor paid the debt. The reason is obvious; they were by the escape made presently liable for it.

The case of *Ravenscroft* v. *Egles*, 2 Wilson, 294, was an action on the case against the warden of the Fleet prison for a voluntary escape. The prisoner returned to prison on the day of the escape, and the plaintiff proceeded to judgment against him. The decision was, that the action could be maintained. In the opinion it is said, " though the plaintiff might lawfully proceed to judgment against him, yet he could not charge him in execution." And if an escape be voluntary in the jailer, " nothing afterwards will purge it." Here therefore was a present injury, which could be proved. The case of *Alexander* v. *Macauley*, 4 T. R. 611, was an action on the case against the sheriffs for an escape. The plaintiff could not prove any debt against the person who escaped ; and the question was raised, whether he could recover nominal damages, and it was decided, that he could not. The case put by Mr. Justice Dewey, of neglecting " to attach his goods," is that of a neglect to make any attachment, when directed to do so ; and between such a case, and that of neglecting to attach sufficient, there is this important distinction : in the former case, the plaintiff is deprived of the security, to which he is entitled by law; and that is a present injury capable of present proof; and it lays the foundation of an action upon the case on the principle before stated, that the right of action accrues, when the injury is suffered. In the latter case, there is no violation of the right to have security. And when there is a substantial, and not a nominal and deceptive compliance with the order to attach, it must remain uncertain, whether any loss will arise from the neglect, until after judgment, if not until after an ap-

propriation of the property, which has been attached. Take the case of an attachment of a large stock of goods as an example. The neglect to make an attachment destroys the right of security, and the immediate damage would be apparent and of easy proof. If two thirds of the stock were attached, when the order was to attach the whole, the officer might be able to prove by the wholesale prices and by the present cash value, that he had in custody sufficient to cover the *ad damnum* and all costs, and if the plaintiff immediately commenced a suit he must fail. And yet these same goods on a sale according to law might not pay two thirds of the debt. The right of action here in fact would first arise, when the plaintiff was injured. The case of *Miller* v. *Adams*, 16 Mass. R. 456, illustrates this distinction. That was an action upon the case against a deputy of the sheriff for neglecting to serve a writ. He had attached property and summoned a trustee, but had not made service on the principal defendant. The decision was, that the right of action accrued on the return of the writ, although the omission to serve on the defendant did not become known to the plaintiff until a long time afterward. Here there was a present injury at the time of the return, and capable of proof; and the cause of action therefore then accrued; and it was through the inattention of the plaintiff or his attorney, that it was not immediately known. Where the remedy is perfect, although the party may not know it to be so, the statute will commence to run against him. But when he has come to the knowledge of a wrongful act and fears an injury from it, it will not begin to run, until he is actually damnified. *Cæsar* v. *Bradford*, 13 Mass. R. 169, was an action on the case against the sheriff. The first count was for a false return by his deputy in stating, that he had taken a bail bond, when he had not. The bail bond was not demanded for more than a year after judgment, when there was no remedy upon it against the bail. The decision was, that the limitation of one year was for the benefit of the bail only, and not for the sheriff. The action was not commenced until after *non est inventus* had been returned on the execution. And at

that time the plaintiff had suffered an injury in being deprived of his security arising from the custody of his debtor, or its equivalent a bail bond.

*Mather* v. *Green*, 17 Mass. R. 60, was an action on the case against a deputy of the sheriff for taking insufficient bail. One person only was taken as bail. A judgment on *scire facias* had been obtained against him, and the execution issued thereon had been returned with an indorsement, that neither body nor property could be found. For the plaintiff it was contended, that the right of action did not accrue until after this return. The decision was, that it accrued on the return of *non est inventus* on the execution against the principal, as the plaintiff then might have inquired, and "would have ascertained the fault of the defendant in that he had taken but one surety." At that time he had suffered an injury, and could have proved, that he had been deprived of the security, to which he was by law entitled, and that such security had become highly important. *Bailey* v. *Hall*, 4 Shepl. 408, was an action on the case against the sheriff with a count in trover. The plaintiff alleged, that a deputy of the defendant had attached his goods on a writ in favor of Howard, and had wasted them before the judgment. The goods were not applied to satisfy the execution issued on the judgment recovered by Howard against the plaintiff. The decision was, that the right of action did not accrue until the attachment was dissolved. The case of *Harriman* v. *Wilkins*, 2 App. 93, was an action on the case against the sheriff for the neglect of a deputy in taking a replevin bond with insufficient sureties. The decision was, that the right of action did not accrue until after judgment for a return and a failure to procure the property. It will be perceived, that the cases are all reconcilable and consistent with the principles before stated; and this would seem to be sufficient to test their accuracy.