PEOPLE, TO USE OF TRITCH, v. CRAMER ET AL.

1. ACTIONS ON BONDS OF SHERIFFS — OBJECT OF STATUTORY REQUIREMENT, AND CONSTRUCTION THEREOF.— The statutory provision requiring suits upon the bonds of sheriffs to be brought within one year "after the cause of action shall have accrued" is framed in the interest of the official named and his bondsmen. But if possible, it should be so construed as also to protect litigants from remediless wrong.

2. WHEN A CAUSE OF ACTION ACCRUES.— When a contract, express or implied, is violated, a cause of action at once accrues. The same is true of torts constituting a trespass upon person or property; also of torts in connection with which *assumpsit* might have been maintained at the common law.

3. RULE AS TO RIGHT OF ACTION AGAINST OFFICIALS.— Where persons are charged by law with certain functions or duties which are pri-

marily of a public nature, no cause of action arises in favor of individuals for whom they incidentally act, until the alleged misconduct constitutes an invasion of some private right. The sheriff belongs to this class of officials.

4. RIGHTS OF LITIGANTS, AND WHEN A CAUSE OF ACTION ARISES IN THEIR FAVOR AGAINST A SHERIFF.— The right of litigants is the judicial collection of their debts, or enforcement of such other legal redress as the law may authorize. And no cause of action exists against the sheriff until his negligence or misconduct has prevented or retarded the vindication of this right. The cause of action accrues when consequential injury has followed official non-feasance or misfeasance, and not before.

*Error to District Court of Arapahoe County.*

THE complaint of Tritch, plaintiff below, averred, among other matters, the following: "That in June, 1886, Tritch commenced his action upon a promissory note against the Bailey Reduction Company to recover the sum of $18,461.27; that at the same time a writ of attachment was at his instance duly issued and placed in the hands of defendant Cramer, the sheriff, for levy; that the sheriff was instructed to attach thereunder all the estate of the company within the county of Arapahoe; that on the same day, or the next, by direction of Tritch, a description of certain specified real estate of the company, which was then wholly unincumbered, was procured from the office of the clerk and recorder and placed in the hands of the sheriff with instructions to levy the attachment thereon at once; that the company possessed no other realty; that the sheriff negligently failed to make said levy upon the real estate mentioned, or upon anything else save some personal property, until the month of September following, at which time, Tritch having procured his judgment, his execution and attachment were together levied upon the premises referred to; that in the meantime, on the 3d day of August, thirty-four days after the attachment had been placed in the sheriff's hands, certain other judgments, aggregating the sum of $7,491, were obtained against the defendant company by one Atterbury and others, and transcripts thereof were at once

recorded in pursuance of the statute; that these judgments therefore created prior, and hence superior, liens upon the land in question; that in December, 1886, the property having been duly advertised was sold under Tritch's execution, and purchased by him for the sum of $18,000; that this amount was more than its real value, but was bid by Tritch in order to secure the payment of his entire judgment through the anticipated redemption by other creditors; that on the 7th of February, 1887, executions under the judgments of Atterbury *et al.* were levied upon the property, and it was sold, being purchased by the judgment creditors, for the amount of their claims with interest; that in September, 1887, Tritch received his sheriff's deed in accordance with his certificate of purchase, and thus became the sole owner of the premises clear of all incumbrances, except the liens created by the said judgments of August 3d, and sales thereunder; and that "it was necessary for Tritch to purchase and acquire the certificates of purchase issued by the coroner to the other said judgment creditors, which he did on the said 2d of September, at and for the face value thereof, to wit, $7,865.55."

The action is against the sheriff and his bondsmen, upon his official bond, to recover the amount which Tritch was required to pay through the negligence, as it is alleged, of this official in failing to levy the writ of attachment until after liens had been acquired by other creditors as aforesaid. To the complaint a demurrer was duly interposed, upon two grounds: *First,* the failure to plead a cause of action; and *second,* a bar by the statute of limitations. This demurrer was sustained, and final judgment rendered dismissing the action. To review that judgment the present writ of error was sued out.

Messrs. PATTERSON & THOMAS, for plaintiffs in error.

Mr. L. B. FRANCE, for defendants in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

Both parties agree that the court below sustained the demurrer in this case upon the ground that the action was barred by the statute of limitations. This is the sole question argued by counsel for plaintiff in error, and the principal subject discussed by opposing counsel. Its determination rests upon a construction of the following statute: " All actions against sheriffs and coroners, upon any liability incurred by them, by the doing of any act in their official capacity, or by the omission of any official duty, except for escapes, shall be brought within one year after *the cause of action shall have accrued*, and not after that period." Sec. 2166, Gen. St.

The precise force and effect to be given this statute is, as we shall presently see, a question of no little difficulty. The provision is evidently framed in the interest of the officers mentioned, and their official bondsmen. Its purpose is to prevent annoyance and injustice through the prosecution against them of stale demands predicated upon official neglect or other misconduct. This purpose is eminently wise; but, in our judgment, the statute should, if possible, be so construed as that, while the persons designated are fairly protected, litigants may not be made thereby to suffer grievous and remediless wrong.

The adjudication of the present controversy obviously depends upon the view we shall adopt as to the precise point of time when Tritch's cause of action accrued. Was it when the alleged official non-feasance occurred, or was it when the consequential injury complained of had followed?

When a contract, express or implied, is violated, actual injury is in law an immediate sequence, and suit may at once be instituted. The damages may be much or little, but the cause of action is complete. If the precise extent of the injury be not immediately apparent, it may nevertheless be approximately computed. So, also, a tort, if of such a nature as that *assumpsit* might have been maintained

at common law, gives rise to an immediate cause of action, for such torts are always at least *quasi ex contractu;* as, for instance, where an attorney, by gross negligence or intentional misconduct, violates his implied promise to diligently and faithfully attend to his client's business and the latter suffers loss. To this class of cases belong that of *Wilcox v. Executors of Plummer,* 4 Pet. 172, and several others relied on by counsel for defendant in error. See, also, Ang. Lim. (6th ed.) 123. In all torts, likewise, which constitute a trespass upon person or property, there is at once actual damage of which the law takes notice; for example, an assault upon plaintiff's person or a physical invasion of his freehold. In such cases a complete right of action springs into existence upon the commission of the trespass.

Where, however, persons are charged by law with certain functions or duties which are primarily of a public nature, though, incidentally, in a special manner affecting private individuals, the doctrine above announced is not always adhered to. Contrariety of judicial opinion appears in the decisions, but the better view, we think, is that in such cases no contractual relation, express or implied, exists between the party thus charged and the individual for whom he incidentally acts. The violation of the duty is undoubtedly unlawful; and, as has been well said, "when its consequences are the invasion of an individual right (and then only) it becomes a proper subject of redress by him" (the individual). We quote further from the same opinion:

" The duties imposed upon public officers are analogous to those of moral obligation. Their violation is not necessarily a legal injury to those in whose favor they exist. They must affect some right such as the law is wont to redress before they can be made the subject of a suit. It is the duty of a municipal corporation to keep certain highways free from obstruction. The duty is to the public for the benefit of every individual in the community. If an obstruction is negligently permitted to exist, it may be said that, in a sense, a duty to each individual is violated. But

it is not competent for every inhabitant of the vicinage thereupon to bring his action for the breach of duty to himself; not even if he is put to some trivial inconvenience by the obstruction. * * * The mere violation of the public duty, although the duty is to him indirectly, involves no correlative legal right on his part to sue for such violation.

"It is said familiarly that rights and duties are reciprocal. This is, in a moral sense, and in a properly understood legal sense, true. But it is evident from the illustration just employed that there is no such legal reciprocity between the general duties of public officers and the rights of parties in whose behalf the duties are to be performed, that the right is always actionable when the duty is violated. * * *

"A suitor's right is not then a right to literal forms of procedure, but to enforce his judgment and collect his debt by law. Until this right is injured, no right is injured. Until the officer fails to bring the property of the debtor within the power of the law's final process, founded upon a creditor's valid judgment, he has been guilty of no violation of duty in a legal view. So that, if we suppose a direct relation between the plaintiff and the officer,— a legal reciprocity of right and duty between them,— and concede that damages are to be presumed where the former is invaded or the latter violated, it is clear that neither of these incidents occurs until something more than a neglect to attach, or an incorrect return, is imputable to the officer." *Bank v. Waterman*, 26 Conn. 323. "When the action is founded upon a neglect of official duty, the gist of the action is the injury suffered; and no action can be maintained but one in form, as well as in substance, founded on that injury, unless it be otherwise provided by statute. The relation between an officer and the person for whom he performs an official act is not that arising out of a contract, express or implied." Dissenting opinion of Mr. Justice Shepley in *Betts v. Norris*, 21 Me. 324.

It is hardly necessary to say that the sheriff belongs to

the class of public servants last above designated. He is elected by the people, and occupies his office during a term specified by statute. His functions and fees are prescribed by law, and do not depend upon contract with the persons whom he incidentally serves. He is a public officer, and his duties are primarily of a public nature. In the discharge of these duties he sometimes acts for private suitors, whose right, as above defined, is the judicial collection of their debts, or enforcement of such other legal redress as the law may authorize. If the negligence or misconduct of the officer in no way prevents or retards the vindication of this right, no legal injury results, and, in our judgment, no right of action accrues. As, for instance,— employing two familiar illustrations,— the sheriff negligently fails to serve a subpœna placed in his hands, but the witness voluntarily, and without any further effort of the suitor, appears at the appointed time and place and gives the desired testimony; or the official carelessly omits to levy a writ of attachment as directed, but the judgment ultimately recovered is nevertheless promptly paid. Were we to hold that in these and all similar instances a right of action exists in favor of the suitor, and therefore that he may recover from the sheriff or his bondsmen at least nominal damages, the responsibilities of that official would be rendered more onerous and his position more hazardous than it is already. Every suitor who could truthfully complain of negligence on the part of the officer, though he be in no wise injured, might harass the official with a judicial proceeding and mulct him in costs, besides his attorney's fees. We do not think the law contemplates or requires the imposition of this burden, and shall hold accordingly.

The majority opinion in *Betts v. Norris, supra,* has been carefully studied and weighed. It is probably as able a presentation of the subject as can be made upon the side of the question espoused; but, with all due respect to the learned court pronouncing it, we feel that the contrary view taken by Mr. Justice Shepley in his dissenting opin-

ion, and by the majority of the court in *Bank v. Waterman*, *supra*, is predicated upon sounder logic and in harmony with higher considerations of justice. We make no attempt to argue the question at length. For thorough and exhaustive discussions of it, counsel are referred to the opinions just mentioned.

Tritch brought the present suit within a year from the time he suffered the alleged consequential injury; and it follows from the foregoing conclusion that the objection predicated upon the bar of the statute of limitations must be overruled.

As to the remaining ground of demurrer but little need be said. Counsel for defendant in error relies, in his printed argument, upon the proposition that Tritch's redemption from the sale under the prior judgments was entirely voluntary, and that therefore he cannot recover in this action. The averments of the complaint are, for present purposes, admitted by the demurrer to be true, and these averments, in our judgment, make a *prima facie* case in this regard. Under the circumstances, it appears to have been legally necessary for Tritch to exercise his right of redemption before a sheriff's deed to Atterbury *et al.* undermined his levy and sale, and rendered it impossible for him to realize any portion of his debt from the land in question. Counsel being silent, we express no opinion as to the legal effect of Tritch's bid of $18,000 for the property, knowing that it was subject to liens aggregating nearly $8,000. A portion of his claim remained, in any event, unsatisfied.

Upon no view presented in this court can the ruling on the demurrer be sustained.

The judgment is therefore reversed.

*Reversed.*