**DELTA SALES YARD, Petitioner,**

v.

**Pepper PATTEN, Respondent.**

**No. 93SC699.**

Supreme Court of Colorado,
En Banc.

March 13, 1995.

Woodrow, Roushar & Carey, Frank J. Woodrow, Montrose, for petitioner.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Simon P. Lip-

stein, Asst. Atty. Gen., Tort Litigation Section, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We are called on to decide whether a Deputy Brand Inspector, employed by the State Board of Stock Inspection is a "law enforcement authority" subject to the one-year statute of limitations. The court of appeals answered the question in the affirmative. We affirm.

I

Delta Sales Yard (Delta) operates a licensed livestock sales yard. Delta filed a complaint in the district court in November 1990 against Pepper Patten (Patten) and Joseph R. Schrader[1] alleging that in December 1988, Schrader purchased sixty-one head of cattle from Delta for $24,613.86 through the Limon Livestock Exchange. Delta claimed that Patten, a State of Colorado Deputy Brand Inspector, while acting in his official capacity, permitted the resale of the cattle to Schrader without proper title clearance.

In his answer, Patten asserted the statute of limitations as an affirmative defense and subsequently filed a motion for summary judgment, relying upon section 13–80–103(1)(c), 6A C.R.S. (1987), which provides all claims against a "law enforcement authority" must be commenced within one year after the cause of action accrues. Patten argued that because brand inspectors are conservators of the peace pursuant to section 18–1–901(3)(*l*)(IV), 8B C.R.S. (1986) and have authority to enforce the laws of the State of Colorado while acting within the scope of their authority and in performance of their duties they fall within the term "law enforcement authority."

The trial court determined that the State Board of Stock Inspection was a law enforcement authority pursuant to section 13–80–103(1)(c) and Patten was subject to that section while engaged in his official duties as a brand inspector for the State of Colorado. The court granted the motion for summary judgment and dismissed the action against Patten.

Delta appealed, maintaining section 13–80–103(1)(c) was unconstitutionally vague and over-broad, both facially and as applied, and violated rights of equal protection under the United States and Colorado Constitution. Delta further argued that even if section 13–80–103(1)(c) applied to brand inspectors, the section should be limited to duties authorized under section 35–53–128, 14 C.R.S. (1984). The court of appeals rejected these arguments and affirmed in *Delta Sales Yard v. Patten*, 870 P.2d 554 (Colo.App.1993).

A

Section 13–80–102(1)(h), 6A C.R.S. (1987) provides "all actions against any public or governmental entity or any employee of a public or governmental entity" must be commenced within two years after the cause of action accrues, "except as otherwise provided in this section or section 13–80–103."

Section 13–80–103(1)(c), 6A C.R.S. (1987) states that "all actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any *other law enforcement authority*" must be commenced within one year after the cause of action accrues. (Emphasis added).

It is a well-accepted principle of statutory construction that in the case of conflict, a more specific statute controls over a more general one. *Jones v. Cox*, 828 P.2d 218, 223 (Colo.1992). The co-sponsor of S.B. 69, Representative Peter Minahan, specifically acknowledged that the purpose of cross-referencing section 13–80–102(h) with section 13–80–103 was to assure that the latter statute took priority over the prior. *Hearings on S.B. 69 before the House Jud. Comm.*, 55th Gen. Assembly, 1st Reg. Sess. (audio tape, Mar. 13, 1986, at 13:49–15:20).

Here, the two year statute of limitations for governmental entities, section 13–80–102(h), specifically excepts those actions and persons described in section 13–80–103, which includes all actions against "any other law enforcement authority." In this case we

---

1. Schrader is not a party to this appeal.

are not presented with an ambiguous situation in which two limitations periods arguably apply.[2] Rather, here, we must discern the meaning of "law enforcement authority," and if a brand inspector comes within the meaning of that phrase, it is clear section 13–80–103(1)(c) applies to this action.

### B

Section 13–80–103(1)(c) provides no definition of "law enforcement authority." Delta argues on appeal that the statute is unconstitutionally vague due to the lack of definition and because a reasonable person could not easily discern the meaning of the phrase.

▪ We have not previously had the opportunity to interpret the phrase "law enforcement authority." In construing previously undefined statutory words and phrases, we must give effect to legislative intent and purpose. *Goebel v. Colorado Dept. of Inst.*, 830 P.2d 1036, 1040 (Colo.1992). Furthermore, "words and phrases used in statutes are to be considered in their generally accepted meaning, and a court has a duty to construe the statute in such a way that it is not void for vagueness when a reasonable and practicable construction can be given to its language." *People v. Rosburg*, 805 P.2d 432, 439 (Colo.1991).

▪ A statute is unconstitutionally vague only if persons of common intelligence must guess at its meaning, or differ as to its application. *People v. Enea*, 665 P.2d 1026, 1027 (Colo.1983). The legislature is not constitutionally required to define specifically readily comprehensible and everyday terms it uses in statutes. *People v. Phillips*, 652 P.2d 575, 580 (Colo.1982).

▪ While neither the statute itself, nor the legislative history provides definitional guidance, we find the term "law enforcement authority" does not present a vagueness problem.

The term "enforce" is commonly understood to mean "to compel observance of (a law, etc.)." *Webster's New World Dictionary* 463 (2nd Ed.1974).

"Authority," when used as a noun, means "persons, especially in government, having the power or right to enforce orders, laws, etc." *Id.* at 94. It is also defined as "a government agency that administers a project." *Id.*

Delta urges us to hold that "authority" is used in the statute as a jurisdictional term and thus applies to agencies rather than individual officers. However, there is nothing in the language of section 13–80–103(1)(c) to indicate that the legislature intended to limit the applicability of the term "authority" to jurisdictional status only.

In 1986, the former section 13–80–103 was repealed and reenacted as part of the extensive tort reform undertaken by the legislature at that time. *See* Ch. 114, sec. 1, §§ 13–80–101 & –103, 1986 Colo.Sess.Laws 695, 695–96. Prior to its repeal, section 13–80–103 read, "[a]ll actions against sheriffs and coroners upon any liability incurred by them by the doing of any act in their official capacity or by the omission of any official duty, except in relation to accounting to the county for fees earned or collected, and except for escapes, shall be brought within one year...." § 13–80–103, 6 C.R.S. (1973).

Upon its reenactment, section 13–80–103(1)(c) was broadened to include police officers, firefighters, members of the national guard, and any other law enforcement authority.

Colorado has implemented a one-year statute of limitations period for all actions against sheriffs for over 100 years. *See, e.g., People v. Cramer*, 15 Colo. 155, 158, 25 P.

---

**2.** This case is distinguishable from our recent decisions in *Dawson v. Reider*, 872 P.2d 212 (Colo.1994) and *Regional Transportation District v. Voss*, 890 P.2d 663 (Colo. Feb. 21, 1995).

*Dawson* held the three-year statute of limitations for actions under the Colorado Auto Accident Reparations Act, § 13–80–101(1)(j), 6A C.R.S. (1987) rather than section 13–80–103(1)(c), which pertains to sheriffs, was applica-

ble in legal proceedings against a sheriff and his deputy.

Likewise, in *Regional Transportation District*, this court determined the Colorado Auto Accident Reparations Act, § 13–80–101(1)(j), rather than section 13–80–102(h), which pertains to government entities, applied in an action against the Regional Transportation District.

302, 302 (1890). This limitations period was adopted and "is evidently framed in the interest of the officers mentioned and their official bondsmen. Its purpose is to prevent annoyance and injustice through the prosecution against them of stale demands predicated upon official neglect or other misconduct." *Id.* at 158, 25 P. at 302; *see also Cain v. Guzman,* 761 P.2d 295 (Colo.App.1988); *Bailey v. Clausen,* 192 Colo. 297, 557 P.2d 1207 (1976). The legislature, by increasing the classes covered under section 13–80–103(1)(c), intended to afford the protection previously offered only to coroners and sheriffs to others with law enforcement responsibilities.

Contrary to Delta's assertion that "law enforcement authority" is exclusively jurisdictional, we believe the legislature intended the phrase to refer to those persons who have the statutory authority to enforce the laws of the State of Colorado.

## C

Having determined the term "law enforcement authority" is not vague, we now turn to a determination of whether a brand inspector may properly be characterized as a "law enforcement authority."

Section 18–1–901(3)(*l*)(IV), 8B C.R.S. (1986) provides in part, " '[p]eace officer, level III,' means ... a brand inspector pursuant to section 35–53–128, C.R.S. ... 'Peace officer, level III,' has the authority to enforce the laws of the State of Colorado while acting within the scope of his authority and in the performance of his duties."

Likewise, *Black's Law Dictionary* states the position of peace officer:

[i]ncludes sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers *whose duty is to enforce the local government laws and ordinances and preserve the public peace.* In general, any person who has been given general authority to make arrests. Generally a 'peace officer' is a person designated by public authority to keep the peace and arrest persons guilty or suspected of crime and he is a conservator of the peace, which term is synonymous with the term 'peace officer'.

*Black's Law Dictionary* 1130 (6th ed. 1990). Accordingly, by its very definition, a "peace officer, level III" is a law enforcement authority.

Delta contends Patten was not acting as a level III peace officer because he was not performing duties pursuant to section 35–53–128, 14 C.R.S. (1984 & 1994 Supp.) but was simply engaged in ministerial duties required by section 35–55–112, 14 C.R.S. (1984 & 1994 Supp.). Thus, Delta maintains that Patten cannot be deemed a "law enforcement authority." We disagree.

Section 35–53–128 states:

(1) In addition to his other duties, a duly appointed brand inspector is authorized to ride the ranges, pastures, and other localities within the state to protect the livestock industry of the state from depredations and theft.

(2) Brand inspectors in the exercise of their statutory duties are vested with all the powers of arrest, with or without a warrant, conferred upon peace officers as set forth in section 16–3–101, C.R.S.

(3) The state board of stock inspection commissioners may authorize brand inspectors to equip their cars with sirens, red lights, and other devices for use in the apprehension of persons suspected of theft of livestock or violation of stock inspection laws. The board may also authorize the said stock inspectors to carry arms.

A brand inspector's duties are not confined to those specified by section 35–53–128, but rather are detailed throughout Title 35, which relates to the overall topic of agriculture.[3] Interpreting section 35–53–128 to afford the power of arrest to brand inspectors

---

**3.** Articles 40–60 of Title 35 relate to Livestock specifically and within these articles, the legislature has accorded brand inspectors wide-ranging duties including those found in the following Articles of Title 35: Article 43 (Branding and Herding); Article 44 (Estrays); Article 50 (Prevention and Eradication of Diseases); Article 53 (Transportation of Livestock); and, Article 55 (Public Livestock Markets). Additionally, a brand inspector has further duties as detailed in Title 12, Article 11 (Slaughterers).

for only those duties listed within section 35–53–128 or within Article 53 itself would lead to a manifestly absurd result. The plain language of section 35–53–128 grants brand inspectors the ability to enforce the law through the power to arrest for *all* of their statutory duties.

Furthermore, although the power to arrest necessarily signifies "law enforcement," the power to arrest is not the exclusive manner of enforcing the law. Here, however, it is not necessary to inventory each and every method of law enforcement. Brand inspectors are specifically granted the power to arrest in the exercise of all of their statutory duties by virtue of their status as a level III peace officer. Because of their continuing power of arrest, a brand inspector is a "law enforcement authority" as contemplated by section 13–80–103(1)(c), 6A C.R.S. (1987).

In conclusion, we hold that a brand inspector is a "law enforcement authority" which requires the application of a one year statute of limitations pursuant to 13–80–103(1)(c). Accordingly, we affirm the decision of the court of appeals.