## L. AUSTIN GRAY *vs.* JOHN B. DAY.

### Washington.  Opinion November 14, 1912

*Acknowledgment.  Brief statement.  Conditional promise.  Correspondence.*
*Counter brief statement.  Interpretation.  Limitations.*
*Statutes.  Waiver.  Writing.*

Action on promissory note.  The defence is the Statute of Limitations, by brief statement.  The plaintiff filed a counter brief statement alleging that defendant had waived, in writing, the Statute of Limitations.  The writ was dated December 16, 1911.  The note sued is as follows:

"Wesley, Me., Mar. 8, 1905.  $72.00.  Five months after date, I promise to pay to the order of L. Austin Gray seventy-two dollars, interest at six per cent.  Value received."  (Endorsed on the back)  "Aug. 5, 1905. Received $1.80, interest on the within."  "Oct. 3, 1905.  Received $20.00, on the within."  The two following letters from the defendant to plaintiff's attorney constitute the evidence relied upon by plaintiff to establish the promise in writing to pay the note and also the waiver of the Statute of Limitations:

Waterville, Me., 9-21, 1911.  Mr. H. H. Gray, Millbridge, Me.  Dear Sir; Yours of the 19th inst. at hand.  Regarding same would say, I have had no thought of letting this note run out to avoid paying it, and had it run over that time I would feel just as much obliged to pay it.  I know Austin has been very patient and I thank him for it.  I am sorry to say that at the present time I don't see how I can pay anything on this note, but I will give a new note which would amount to the same thing you mentioned.  Will you let me know if that will do, and we can fix it up any time in that way.  Awaiting your reply, I am, yours truly, John B. Day.  P. S.  I have a new pung for which I paid $55.00 and if he, Austin, would like that as payment I would deliver it to him for $45.00.  This is a spring pung, upholstered with green plush.  It has never had the thills in it.  If he is interested in it, he can see it at Heman Dodge's in Westley.

Waterville, Me., 10-11, 1911.  Mr. Gray, Dear Sir; Yours of the 30 ult. at hand some time ago.  I have been thinking it over, and am sorry to say that it is impossible for me to pay 10 per cent. interest.  6 per cent. is all I can possibly pay.  I will pay that, and do it as soon as I can.  Yours truly, John B. Day.

*Held:* 1. That the letters do not contain such an acknowledgment and promise in writing as to remove the bar of the Statute.

2. That they do not prove a waiver which operated as an estoppel upon the right of the defendant to invoke the Statute.

On report. Judgment for defendant.

This is an action of assumpsit on a promissory note dated March 8, 1905, upon the back of which were two indorsements of payments, one dated August 5, 1905, and the other dated October 3, 1905.

The defendant plead the general issue with a brief statement of Statute of Limitations. The plaintiff filed a counter brief statement alleging a waiver of the Statute and an acknowledgment and promise in writing to pay.

At the conclusion of the evidence the case was reported to the Law Court.

The case is stated in the opinion.

*H. H. Gray,* for plaintiff.

*Warren C. Philbrook,* for defendant.

SITTING: WHITEHOUSE, C. J., SPEAR, CORNISH, BIRD, HALEY, HANSON, JJ.

SPEAR, J. This is an action on a promissory note, and comes up on report. The plea was the general issue and the statute of limitations. A counter brief statement was filed alleging waiver of the statute and acknowledgment and promise in writing to pay. The case is made up entirely of correspondence between plaintiff's attorney and the defendant, together with the exhibits representing the original and renewal notes. The chronological order of the evidence is as follows:

1. Exhibit A., defendant's promissory note and endorsements of the following tenor: Wesley, Me., Mar. 8, 1905. $72.00. Five months after date I promise to pay to the order of L. Austin Gray, Seventy-two Dollars, interest at six per cent. Value received. John B. Day. (Endorsed on the back) Aug. 5, 1905, received $1.80 interest on the within. Oct. 3, 1905, received $20.00 on the within.

2. Exhibit D., a letter from the plaintiff's attorney to the defendant as follows: Milbridge, Me., September 19, 1911. John B. Day,

Esq., Waterville, Me. Dear Sir:—L. A. Gray has sent me a note against you upon which is due $72.85. This note will soon be barred by statute unless you make a payment, or action is commenced. If you will send me a payment at once so as to keep the note good we will then arrange to make it convenient for you to pay the balance, otherwise I shall have to commence action. Yours very truy, H. H. Gray.

3. Exhibit B., a letter from the defendant to the plaintiff's attorney which reads: Waterville, Me., 9-21, 1911. Mr. H. H. Gray, Millbridge, Me. Dear Sir: Yours of the 19th inst. at hand. Regarding same would say, I have had no thought of letting this note run out to avoid paying it, and had it run over that time I would feel just as much obliged to pay it. I know Austin has been very patient and I thank him for it. I am sorry to say that at the present time I don't see how I can pay anything on this note, but I will give a new note which would amount to the same thing you mentioned. Will you let me know if that will do, and we can fix it up any time in that way. Awaiting your reply, I am yours truly, John B. Day. P. S. I have a new pung for which I paid $55.00 and if he, Austin, would like that as payment I would deliver it to him for $45.00. This is a spring pung, upholstered with green plush. It has never had the thills in it. If he is interested in it, he can see it at Heman Dodge's in Westley.

4. Exhibit E., a letter from plaintiff's attorney in reply to the defendant's letter, exhibit B. Milbridge, Me., September 30, '11. John B. Day, Esq., Waterville, Me. Dear Sir: I have written Austin who says he has a spring pung and does not care for yours. He says he will renew the note for a year at 10 per cent. if you will pay my charges which will be small. I enclose note for you to sign if you desire to do this and if you will return this to me with $2.00 for my services it will extend the matter another year. Please sign at the right where I have made pencil cross and have a witness sign at the left. Please return this at once if you desire to do this. When new note is received I will send you the old one. Yours truly, H. H. Gray.

5. Exhibit C., a letter of the defendant to the plaintiff's attorney in reply to exhibit E. Waterville, Me., 10-11, 1911. Mr. Gray, Dear Sir: Yours of the 30 ult. at hand some time ago. I have been

thinking it over, and am sorry to say that it is impossible for me to pay 10 per cent. interest. 6 per cent. is all I can possibly pay. I will pay that, and do it as soon as I can. Yours truly, John B. Day.

6. Exhibit F., the last letter of the plaintiff's attorney to the defendant. Milbridge, Me., November 2, 1911. John B. Day, Esq. Waterville, Me. Dear Sir:—I forwarded your letter to Austin and he makes three propositions: First, you give a note payable one-half in six months and the balance in one year at 6 per cent. interest. Second, he will take a note at 6 per cent. for one year secured or with a good signer. Third, he will take your individual note one year at 10 per cent. and in either case you to pay my small charge of $2.00. Please let me hear from you at once in regard to the matter. Yours truly, H. H. Gray.

7. Defendant's Exhibit A., the renewal note. Waterville, Me., Sept. 30, 1911. One year after date I promise to pay to the order of L. Austin Gray, Seventy-two dollars and eighty-five cents with interest at ten per cent. per annum until paid. Value received.

To Exhibit F. the defendant made no reply, whereupon suit was brought upon the original note, the plaintiff relying upon the correspondence above exhibited as an acknowledgment or promise sufficient to relieve the note from the statute of limitations. Upon these exhibits are raised two questions. First, do they, as claimed by the plaintiff, contain such an acknowledgment and promise in writing, as to remove the bar of the statute? Second, do they prove a waiver which operated as an estoppel upon the right of the defendant to invoke the statute? It is the opinion of the court that both questions must be decided in the negative.

The principles of law raised in these two questions are so interwoven that it becomes quite necessary to consider them together inasmuch as the language which is claimed to prove a waiver may at the same time be interpreted to convey a promise or acknowledgment, or a conditional promise. The case must be determined according to the language of our statute which is of long standing, and, by frequent construction from an early date down through its history, would seem to be well understood. The statute reads as follows: "In actions of debt or on the case founded on any contract no acknowledgment or promise takes the case out of the operation hereof unless the acknowledgment or promise is express, in writing

and signed by the party chargeable thereby." R. S., Chap. 83, Sec. 100. That this statute should be construed strictly in favor of the bar which it was intended to create and not liberally in favor of a promise, acknowledgment or waiver, is quite clearly established. In *Perley* v. *Little,* 3 Maine, 97, it is said by Chief Justice Mellen in discussing this statute that "Doubts, uncertainties and equivocal expressions, are not by construction, to be converted into promises or acknowledgments." *Warren* v. *Walker,* 23 Maine, 453, decided in 1844 is also in point. To the same effect is *Johnston* v. *Hussey,* 89 Maine, 488, in which Chief Justice Emery said: "After much and varying judicial exposition, statutes of limitations are now almost universally held to be statutes of repose, to be interpreted and applied to effect that purpose. Any act or declaration imposed to defeat or postpone that effect is to be closely scrutinized." *Johnston* v. *Hussey,* 92 Maine, 92, also approves of this rule of interpretation.

Another rule of law of important bearing upon the decision of this case starts in *Perley* v. *Little,* 3 Greenlief, supra, and continues down through the cases, namely, that a promise, acknowledgment or waiver whether express or conditional is to be determined upon an examination of the whole writing; in the language of *Perley* v. *Little* "the plain and fair meaning of the party making use of the expression should be sought for, and then permitted to have its legitimate influence, and nothing further, in the decision of the question."

Our first inquiry, then, upon the written evidence before us may be directed to the determination of whether the alleged promise was express or conditional. In *Perley* v. *Little,* supra, it was held that, even though a part of the writing taken by itself would amount to an express promise or acknowledgment, and take the case out of the statute, yet it might be so modified by other parts as to completely nullify the express promise, or convert it into a conditional one. Under this interpretation we are unable to discover how plaintiff's Exhibit B., the letter of the defendant, can be construed to be more than a conditional promise. The language of the defendant is: "I am sorry to say that at the present time I don't see how I can pay anything on this note, but I will give a new note which will amount to the same thing you mentioned." The thing men-

tioned in plaintiff's Exhibit D was a payment at once so as to keep
the note good. The first sentence above quoted is clearly not such
a promise as to take the case out of the statute; but the second
sentence "I will give a new note which would amount to the same
thing you mentioned" might be sufficient under the rule laid down
in *Peavy* v. *Brown,* 22 Maine, 100. But the letter does not stop
here. It makes the promise upon a condition in this language:
"Will you let me know, *if that will do,* and we can fix it up any
time that way. Awaiting your reply, I am," etc. This by a fair
interpretation of the language clearly means that the defendant
would give a new note, if the plaintiff would consent to take it, and
expressly asks, "will you let me know" whether you will take it.
To summarize the language of this letter, it fairly says: "I will
give a new note if you will take it. Let me know." This was
clearly a conditional promise, and in order for the plaintiff to invoke
a conditional promise to remove the bar of the statute it is incum-
bent upon him to show that he has performed the condition. In
*Porter* v. *Hill,* 4 Maine, 41, the headnote, which fairly states the
case, is as follows: "To take a demand out of the operation of the
statute of limitations there must be either an absolute promise to
pay the debt,—or a conditional promise, accompanied by proof of
performance of the condition." In *Deshon* v. *Eaton,* 4 Maine, 413,
it is also said: "The result of the most approved modern decisions,
as to what declarations or admissions will take a case out of the
operation of the statute of limitations is, that there must be an
admission of present indebtedness, or a promise to pay, absolute or
conditional; and if conditional, it must appear that the conditions,
upon which the promise was to attach, has happened. The authori-
ties upon this point were reviewed and considered in *Perley* v.
*Little,* 3 Greenlief, 97; and more recent cases in the supreme court
of the United States and of Massachusetts, fully warrant the deduc-
tion just stated." To the same effect is *Lombard* v. *Pease,* 14
Maine, 349. Expressly in point is *McLellan* v. *Albee, et al,* 17
Maine, 184, in which the court held: "The language proved to have
been used by the defendant, Albee, may be equivalent to a condi-
tional promise to pay, but the other party did not accede to the
conditions annexed. It is contended, that though not for that
reason effectual as a promise, an admission of present indebtedness

may be inferred from it." But the court held: quoting *Rutlege* v. *Ramsey,* 3 Nev. & Peng., 319, "That although this was an acknowl-edgment of the debt, yet as it contained merely a promise to pay in a particular manner, no general promise to pay could be implied from it, and that it was not sufficient to take the case out of the statute." But it was contended that, though the language, being conditional, was not effectual as a promise, an admission of present indebtedness might be inferred from it. But the court held other-wise, saying: "An acknowledgment of present indebtedness being only evidence from which a promise may be implied, an uncondi-tional promise cannot be implied from testimony exhibiting the condition attached to it; so that any implied promise would be liable to the objection, when it was conditional as the express one." Here it should be observed that the promise, in the case at bar, was to pay in a particular manner—by a new note—and comes squarely within the above rule of law. The leading case, perhaps, upon this point is *Mattocks* v. *Chadwick,* 71 Maine, 313, in which Justice Walton, after citing the phraseology of many promises that had been judicially interpreted, uses this language: "When a new promise is relied on to take the debt out of the statute of limitations, and the new promise is a conditional one, the plaintiff cannot recover unless he proves performance of the condition. Proof of the prom-ise only is not sufficient." In that case the defendant said "I would say now as I said before, and also told Mr. Ward, that when I was able I should most certainly pay the demand; but I am not now, nor have I been, in a condition to settle it." But the court held: "Such a promise is not sufficient to take a case out of the operation of the statute of limitations, without proof of the defendant's ability to pay."

Under this state of law and fact it was entirely competent for the plaintiff to do one of three things: Accept the conditional promise; exact an express promise in writing; or bring suit before the statute of limitations expired. He did neither. It would seem, rather that he preferred to hazard the chance of ten per cent. interest on a new note, including interest and charges on the original, until paid, to the certainty of the defendant's offer, as shown by the letter of September 30, marked Exhibit E. This the defendant declined

to do, as shown by Exhibit C., his letter of October 11th, and this refusal would clearly seem to be inconsistent with an express promise to pay the original note and interest. Even after receiving the letter of October 11th the plaintiff declined to accept the defendant's condition, and again suggested an entirely new proposition, including costs, to which the defendant made no reply. From the evidence disclosed in this correspondence, it is the opinion of the court that neither an express promise to pay nor an acknowledgment of the debt in writing can be properly inferred.

But upon the second question the plaintiff contends that, even if this be true, the correspondence shows a waiver on the part of the defendant to invoke the statute of limitations, on account of which the plaintiff deferred bringing suit, as he otherwise would have done, and consequently the defendant should now be estopped to invoke the statute. But we are unable to discover anything whatever in the evidence that warranted the plaintiff in delaying his action, as the correspondence rather shows that he delayed it in the hope, with the defendant's apparent willingness to give a new note, that he would be able to obtain a note bearing ten per cent. interest instead of the note which the defendant seemed willing to give. The only note which the plaintiff ever sent to the defendant, Exhibit A., written "with interest at 10 per cent. per annum until paid" seems to establish this conclusion. Had he sent a note to the defendant bearing interest at 6 per cent. and had the defendant declined to sign and return this note, a different conclusion might be arrived at. This we do not undertake to decide.

But let us see more specifically upon what evidence the plaintiff claims estoppel. He says it is because the defendant promised to give a new note, reliance upon which induced him to rest easy in the belief that the defendant would do as he had agreed. Concede that the defendant did promise to give a new note which, it may be admitted, would legally imply interest at the rate of 6 per cent., then did he ever refuse? We do not so interpret the defendant's letters. On the other hand, it conclusively appears from the plaintiff's letters, through his attorney, that he declined to take the new note which the defendant expressed a willingness to give.

At this juncture we are met with the anomalous attitude of the plaintiff, of having refused to accept a new note, which he might

have had, and then, of invoking the rule of estoppel because he had declined to take it. The evidence shows not only that there was no waiver but a willingness on the part of the defendant to keep his promise to the letter.

*Judgment for the defendant.*