James M. **WILLIAMS** and
Leone E. **Williams**

v.

**FORD MOTOR COMPANY.**

Supreme Judicial Court of Maine.

July 28, 1975.

Richard A. Davis, Merle C. Rideout, Jr., Portland, for plaintiffs.

Richardson, Hildreth, Tyler & Troubh, by Harrison L. Richardson, S. Peter Mills, III, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

The District Court of the United States, District of Maine, under the provisions of 4 M.R.S.A. § 57, as amended, and M.R.C.P., Rule 76B, has certified to the Supreme Judicial Court of Maine the following question of law:

"Is the Plaintiffs' claim of negligence against the Defendant Ford Motor Company barred by the statute of limitations contained in 14 M.R.S.A. § 752?"

On May 10, 1966, Mr. J. Vance Williams, brother of the plaintiff Mr. James M. Williams, purchased a motor vehicle from the defendant Ford Motor Company. On August 28, 1972, more than six years after the vehicle left the control of the Ford Motor Company, the plaintiff, James M. Williams (who was driving the brother's vehicle) and his wife (the other plaintiff) who was a passenger, were in an accident which they alleged was caused by a defect in the vehicle's left rear axle. On April 27, 1973, the plaintiffs filed a diversity action in the Federal District Court, charging negligence in the manufacture, assembly, and sale of the vehicle.[1]

The defendant answered denying the plaintiffs' charges of liability, and additionally pleaded the affirmative defense that the plaintiffs' claims were barred by their failure to bring their action within the period of the applicable statute of limitations, 14 M.R.S.A. § 752, which provides that:

"All civil actions shall be commenced within 6 years *after the cause of action accrues* and not afterwards . . . except as otherwise specially provided." (Emphasis added.)

The defendant then moved that the issue of the effect of our statute of limitations be certified to this Court and the presiding Judge of the United States District Court granted the motion and has requested us to instruct the Court upon the disputed question under Maine law.

We have been called upon to interpret this statute many times but never upon the circumstances existing in the present case —that is, where the plaintiff was a stranger to the transaction at the time of the claimed misfeasance or nonfeasance.

Statutes of limitations have been created primarily for the purpose of keeping "stale" claims out of court, as we said in *Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), a policy favoring potential defendants who "might otherwise be faced for long periods with the possibility of meeting claims under more difficult conditions." 158 Me. at 230, 231, 182 A.2d at 661. Presumably fully aware of the competing considerations of protecting potential plaintiffs' rights under meritorious claims on the one hand and of protecting potential defendants from the difficulties involved in defending against claims of unreasonably remote origin on the other, the legislature has continued to use a period, measured from the date of accrual of action, beyond which (with certain statutory exceptions) potential plaintiffs' claims will be barred.

Although the underlying philosophy of repose has been an influencing factor in

[1]. The plaintiffs also alleged breach of warranty, but subsequently assented to dismissal, with prejudice, of that claim.

decisions of this Court in close issues involving acts which may or may not prevent the running of the statute (*Gray v. Day,* 109 Me. 492, 84 A. 1073 (1912)); *Johnston v. Hussey,* 89 Me. 488, 36 A. 993 (1897) we do not find that this Court has ever determined the question of when, exactly, a particular cause of action accrues on any basis except that of *the precise substantive elements of the particular cause of action.*

The position of our Court was firmly announced nearly a century and a half ago. P.L.1821, ch. 62, § 16 provided that actions against sheriffs shall be brought "within four years next after the cause of action."[2] The Court, in *Williams College v. Balch,* 9 Me. 74, 77 (1832) was called upon to determine when a cause of action commenced against a sheriff for failure, after demand, to pay money collected on an execution. The Court reviewed its understanding of the time of accrual of various causes of action. The Court concluded that

"in actions on the case for torts, the cause of action accrues, generally, when the tort is committed; though in some cases of concealment of it by the wrong doer, not until the wrong and injury have been discovered. *Now in all these cases, the cause of action exists when a person has a right to demand of another a sum of money as due to him; or damages for an injury done to him, or property belonging to him*; subject only to the exception above mentioned." (Emphasis added.)

It does not appear to us that our Court has ever departed from the basic position that accrual of a tort cause of action as used here means exactly what the legal term implies—the point at which a wrongful act produces an injury for which a po-

tential plaintiff is entitled to seek judicial vindication.

Some doubt may have been cast briefly upon this by the language used in the decision in *Harriman v. Wilkins,* 20 Me. 93 (1841) when the Court said, in dictum:

"The general rule in actions of tort is that the statute commences to run from the time when the consequences of the act arise or happen, and not from the time when the act was done."

There, the possessor of replevied property who had been successful in the replevin trial had not received the return of the property and had been unable to recover his damages from the sureties on the replevin bond. He sued the sheriff for taking insufficient sureties. The Court, in language somewhat obscure, held that the statute did not start to run until the plaintiff had received judgment for the return of the property and had failed to receive the restoration of the property or his damages—rather than at the time of the sheriff's misfeasance.

A few years later, in *Garlin v. Strickland,* 27 Me. 443, 449 (1847) the Court disavowed the quoted principle and explained that *Harriman* was only holding that the replevin defendant

"had no right to a suit upon the bond till judgment in his favor had been rendered, nor until there had been a breach of its condition."

In other words, the *Harriman* Court was holding to the position that no cause of action accrued until the plaintiff had a legally cognizable claim against the sheriff.

Our Court faced the issue again the next year in *Betts v. Norris,* 21 Me. 314 (1842) and must have removed doubts as to the

---

**2.** Also, the original language of the general statute of limitations was, "Within six years next after the cause of such actions or suits, and not after." (P.L.1821, ch. 62, § 7.) By the time of the 1847 revision, the general stat-ute had come to use the phraseology, "Within six years next after the cause of action shall accrue, and not afterwards"—language more clearly in reference to the legal concept of a cause of action. R.S.1847, ch. 146, § 1.

general principle accepted, although the Court remarked:

> "To determine when the right of action accrued, is not without its difficulties." 21 Me. at 317.

In *Betts*, a defendant sheriff's failure to attach sufficient property to satisfy the plaintiff's judgment had *eventually* proved (after levy) to leave the plaintiff with an only partially satisfied execution. The Court ruled that the cause of action accrued when the sheriff's nonfeasance took place

> "and not when it came to be ascertained, by subsequent events, what the precise amount of the injury turned out to be" (21 Me. at 319)

because, the Court said:

> "[I]n every case of violation of the rights of a particular individual, the law implies damage. It may be but nominal. But still a right of action accrues for it." (Id.)

We believe that the sentence just preceding this last quotation brings the Maine rule into focus:

> "It is undoubtedly very true, that no man has a right of action against a wrong-doer, unless he is personally injured." (Id.)

In his dissent to the *Betts* opinion Justice Shepley (pressing his position that there was no evidence of *any* wrong being done to the plaintiff in that case until it was ascertained that the attachment *was* insufficient and the plaintiff had suffered damage) concurred with his colleague's statement that for a tort action to accrue, the plaintiff must personally have suffered some injury which would entitle him to at least nominal damages, saying:

> "A mere violation or neglect of duty enjoined by law, or otherwise imposed without contract, unless accompanied or followed by an injury to some person, cannot be the foundation of an action at

common law. The law does not allow an individual to maintain a suit to redress moral wrongs, from which he has suffered no injury. The state or sovereign power only can interpose in such cases. And to decide whether the omission to comply with an order to attach property was a wrong or an innocent act, can afford little aid in forming a conclusion, [as to] *when the right of action first accrues*. That right does not arise out of any such moral attribute of the act. Nor does it first accrue when a wrongful act is done, unless the party suffers from it at that time, which is the case in trespasses; and may, or may not, be the case in those instances, in which an action on the case would be the proper remedy." 21 Me. at 324, 325.

Although it may be difficult to distinguish between the right to sue for one sheriff's misfeasance in taking insufficient sureties and for another sheriff's misfeasance in attaching insufficient property, the decisions in both *Harriman* and *Betts* turned on the Courts' conclusions as to when the respective plaintiffs became entitled to sue.

In their totality, the *Williams College-Harriman-Betts* decisions established early our position that the statute must be considered to have commenced to run against a plaintiff at the time when he had received a judicially recognizable injury. We do not find that this position has been changed by subsequent decisions.

In *Jedzierowski v. Jordan,* 157 Me. 352, 172 A.2d 636 (1961), after the plaintiff had been tried and found not guilty of a criminal offense, he sued the arresting officer for false imprisonment. The Court held that the plaintiff's cause of action accrued on the day he was released on bail following his arrest (the last day of his wrongful imprisonment)—not, as the plaintiff contended, on the day he was found not guilty of the offense for which he had been arrested.

In *Tantish v. Szendey, supra,* the defendant surgeon had allegedly left tubing in the body of his patient which was not discovered until nearly two years had passed. The plaintiff urged the Court to interpret the statute to intend the statute to run from the date the surgeon's negligence could reasonably be discovered. The Court held that the statute commenced to run on the date of the surgery, saying that it was following the majority rule that the cause of action accrues from "the date of the wrongful act or omission", citing 80 A.L. R.2d 368, 387, 388, 397. 158 Me. at 231, 182 A.2d 660.

It must not be assumed that the *Tantish* Court was announcing a departure from the traditional legal concept of when a cause of action accrues. *Tantish* was speaking of actions for malpractice (as was the annotation which the opinion cited) where the negligent act and an injury occur simultaneously and produce a cause of action. In fact, *Tantish* quoted *Betts* as authority, and it must be remembered that *Betts* pointed out that (1) no cause of action accrues until the plaintiff is personally damaged and (2) the law implies nominal damage, at least, from a violation of the plaintiff's rights.

In *Betts, Jedzierowski,* and *Tantish,* while the Court spoke of the statute as running from the time of the wrongful act, the wrongful act and injury to the plaintiff were contemporaneous. In each case a cause of action for at least nominal damages accrued when the wrongful act was done. In *Betts,* proof of the *amount* of damages only would have had to await levy. In *Jedzierowski,* the plaintiff's imprisonment was wrongful (although he was not certain that he could *prove* it) and he was damaged each day he remained in jail awaiting trial. In *Tantish,* the plaintiff had a cause of action when the defendant did the negligent act even though the plaintiff was not aware of it.

What the *Betts, Jedzierowski,* and *Tantish* Courts were doing was, in fact, refusing to *extend* the statutory period beyond the point at which each plaintiff had received a judicially recognizable injury.

The 1821 Legislature, in implementing its decision to provide defendants a measure of security from stale claims, could have used other events for the beginning of the running of the general statute.[3] It could, for example, have provided that the statutory period should run "from the date of the act or omission complained of," as some statutes have read. Instead, it chose to measure the running of the period *by the extent of a plaintiff's opportunity to commence his action.* In so doing, the Legislature was doubtless making an adjustment between the two worthy but competing interests—that of the plaintiff to have a reasonable time in which to vindicate his claim and that of the defendant to be protected from stale claims. Although the Legislature presumably had this Court's interpretations in mind, it has not seen fit to change its stated standard of measure in more than a century and a half.

█ The defendant acknowledges that a cause of action arises when a wrongful act is coupled with an injury, no matter how slight, but its position seems to be that when Mr. William's *brother* (the owner of the automobile) was damaged by the defendant's negligence the statute started running against these plaintiffs. We have examined the numerous cases which the defendant has cited to support its position. We find that all but three of these cases (several of them malpractice) deal with situations where the defendant's wrongful act was simultaneous with an injury to the plaintiff which would have entitled the plaintiff to at least nominal damages, but the plaintiff was (in some cases) unaware of his injury or (in others) the full consequences of the injury were not immediately apparent. These Courts took the same po-

---

3. In fact, in the same section, the 1821 Legislature provided, for example, that actions for slander must be brought within two years "after the words spoken, and not after." P.L.1821, ch. 62, § 7.

sition we took in *Tantish*. In each case, however, there was an actionable wrong *to the plaintiff* at the time of the defendant's misfeasance or nonfeasance.[4]

Three of them, however, approached the situation which faces us—where the plaintiff was not privy to the wrongful act—but we find them to be of limited assistance.

The plaintiff in *Payne v. Piedmont Aviation, Inc.*, 294 F.Supp. 216 (1968) was the administratrix of the Estate of Bell, who had purchased an airplane from one of several successive former owners, the first of whom had bought it from the defendant. The action alleged that Bell was killed as a result of the negligent manufacture of the plane. The Federal District Judge applied what he considered to be the law of the State of Virginia, that the right to bring an action accrues at the time of the wrongful or negligent act and not at the time the injury is received. The Federal District Court made no mention of the lack of privity between Bell and the manufacturer and no suggestion as to what basis for legal action Bell could have had years before he bought the plane.

None of the Virginia cases which the Federal District Court cites deal with plaintiffs who were not privy to the original negligence.

The opinion in *Bates v. Shapard*, 224 Tenn. 672, 461 S.W.2d 946 (1970) is not entirely clear in its presentation of the issue. The plaintiff, Mrs. Janet Bates, was the guest passenger in an automobile "owned and being driven by Jerry Bates" when the car left the road, allegedly because of negligence in manufacturing, and injured the plaintiff. As the opinion states that "Bates" purchased the car from the defendant we assume that *Mr.* Bates was the purchaser, although the headnote speaks of the plaintiff as the purchaser. The Court held that the plaintiff's cause of action accrued at the time of the sale and left unexplained its conclusion that the non-purchaser (if such was Mrs. Bates' situation) had had a cause of action against the manufacturer before she received any injury. The Court simply adopted the rule announced in *Jackson v. General Motors Corporation*, 223 Tenn. 12, 441 S.W.2d 482 (1969) that "a cause of action based on the

4. We are aware that not all jurisdictions have followed literally the directive of the legislature as to the time of the accrual of the cause of action, and a few do not start the running of the statute with the occurrence of the defendant's conduct plus a nominal invasion of the plaintiff's rights but, instead, in some situations, delay it until actual harm has resulted to the plaintiff, or until the harm becomes discoverable. *See* Developments in the Law: Statutes of Limitations, 63 Harv. L.Rev. 1177, 1200–1205.

The North Carolina Supreme Court seemed to have moved away in the other direction from the literal import of the statutory language. The plaintiff in *Hooper v. Carr Lumber Co.*, 215 N.C. 308, 1 S.E.2d 818 (1939) had suffered damage to his land when a river turned from its natural course as a result of defendant's negligent construction of its logging railroad trestle many years before. The Court recognized that

"[l]ogically speaking, in a matter of tort at least, it takes both the negligent act or omission of duty, and the resultant injury, to constitute a cause of action . . . ",

but concluded, in a case where negligence and injury were widely separated in time, that

"[w]hile the plaintiff could not have brought and maintained his action until some injury to his property had occurred by reason of the alleged acts or omissions of duty of the defendant . . .

. . . both reason and authority require that the running of the statute must be computed from the time of the wrongful act or omission from which the injury resulted." 215 N.C. at 311, 1 S.E.2d at 820.

We find neither precedent for nor compelling logic for such an approach and we consider this North Carolina case, and subsequent North Carolina opinions which employ *Hooper* as precedent, to be exceptions to the accepted rule. In fact, the sole opinion cited in *Hooper*, as authority for its position, *Mobley v. Murray County*, 178 Ga. 388, 173 S.E. 680 (1934) had held that an applicable statute of limitations ran from

"the time when there has been a breach of duty *which would entitle the injured party to file a suit*, without regard to whether any actual damage [as opposed to nominal damage] has in fact resulted." (Emphasis added.) 178 Ga. at 394, 173 S.E. at 683.

negligence of an automobile manufacturer accrues from the date of the purchase of the automobile." 224 Tenn. at 675, 461 S. W.2d at 947.

In *Jackson,* the husband-plaintiff purchased a new automobile and placed its title in the name of the wife-plaintiff. The wife-plaintiff was injured, allegedly because of negligence in · the defendant's manufacturing of the vehicle. The Court concluded that the State's rule that a cause of action for malpractice (where the result of the negligence is not evident at the time of the surgery) accrues at the time of the negligent act is peculiarly applicable as to an action for defects in automobiles which were not apparent at the time of purchase and held that the plaintiffs' actions were barred. It is unclear to us whether the Court considered the wife-plaintiff to have been privy to the purchase from the defendant or was simply making a policy decision that such an interpretation as to the right of action of one who was not privy to the purchase would best serve the purposes of the statute.

None of these cases offer rationales which we find persuasive.

We consider our Legislature's language to be unambiguous. The statute commences to run against a potential action when the *particular* potential plaintiff has a judicially recognizable claim against the defendant.[5] We can come to no other conclusion on the basis of the agreed facts here but that the present plaintiffs had no such claims against the defendant until

they received their personal injuries, to wit, on August 28, 1972.

We realize that the concept of tort product liability without privity upon which the plaintiffs' action rests was unknown to our law in 1821 and was first recognized here —and then only to a limited degree—in *Flaherty v. Helfont,* 123 Me. 134, 122 A. 180 (1923).[6] If the traditional "accrual" starting point for the running of the statute will be unsatisfactory in the new developing area of products liability without privity, we believe that the balancing of the new competing interests is more appropriately one for legislative decision, especially in view of the plain language of the statute.[7]

We also note that when the 1969 Legislature focussed its particular attention on this area of tort liability, declaring that

"Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant, if the plaintiff was a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods" (P.L.1969, ch. 327, § 2, now, as amended, 14 M.R.S.A. § 161),

it did not choose to make any special provision for limitation of actions in the new area of liability which it had legislatively established, leaving the plain language of

---

5. It is not argued to us that the present plaintiffs' causes of action are derivative from the purchaser of the vehicle and thus his accrual date would mark the beginning of the running of the statute against them, and we ourselves find this rationale unacceptable.

6. For an analysis of product liability without privity in Maine, see *McNally v. Nicholson Manufacturing Company,* Me., 313 A.2d 913 (1973).

7. The opinion in *Bates v. Shapard, supra,* noted that a 1969 amendment to Tennessee Code Annotated § 28–304 (subsequent to the commencement of action in that case) provides that "insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury not the date of the negligence or the sale of the product." *See also* Estep and Van Dyke, Radiation Injuries: Statute of Limitations Inadequacies in Tort Cases, 62 Mich.L.Rev. 753 (1964).

the general statute controlling.[8] *See also* 11 M.R.S.A. § 2–318.

Our answer is that the plaintiffs' claim of negligence against the Ford Motor Company is not barred by the statute of limitations contained in 14 M.R.S.A. § 752.

The Clerk will transmit these instructions to the District Court of the United States, District of Maine. All concur.

So ordered.

All Justices concurring.

---

8. When, in 1973, the Legislature adopted the Restatement-like concept of "strict" product liability, it again did not indicate any inten-tion of departing from the traditional ap-proach to the accrual of a cause of action. 14 M.R.S.A. § 221.